IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

IVAN B. LANGLEY and KARLEE E. LANGLEY,

      Plaintiffs,

                                  2:11-CV-774-PK

v.                                  FINDINGS AND
                                  RECOMMENDATION

SHIRLEY E. JONES and CHARLEE A. PHILLIPS, JR.,

      Defendants.

PAPAK, Magistrate Judge:

      Plaintiffs Ivan B. Langley and Karlee E. Langley filed this action against defendants

Shirley E. Jones and Charlee A. Phillips, Jr., on June 24, 2011. By and through their complaint

as originally filed, plaintiffs alleged Jones' liability for fraud and deceit with respect to securities

in violation of Or. Rev. Stat. 59.135, both defendants' liability for financial abuse of an elder in

violation of Oregon's Elder Abuse and Dependent Adult Civil Protection Act and the Oregon

Welfare Institutions Code, and both defendants' liability for intentional infliction of emotional

distress. On January 10, 2012, I found that this court lacked subject-matter jurisdiction over the

Langleys' claims, and recommended that the court dismiss the Langleys' claims but allow them a

period of thirty days within which to amend their complaint in order to cure the jurisdictional

infirmities thereof. On February 17, 2012, the Langleys filed a document styled as their amended

pleading. On March 8, 2012, Judge Simon adopted my recommendation to dismiss the Langleys'

Page 1 - FINDINGS AND RECOMMENDATION

claims for lack of subject-matter jurisdiction and, noting that the Langleys had purported to amend their pleading before receiving the court's leave to do so, rather than grant Langleys the recommended period of thirty days within which to amend their pleading, instead directed me to determine whether the purported amended pleading adequately addressed the jurisdictional infirmities I identified on January 10, 2012. Subsequently, on March 9, 2012, the Langleys having never obtained leave of court to file an amended pleading, I construed the Langleys' filing of February 17, 2012, as a motion for leave to amend, and set the constructive motion under advisement April 9, 2012.

On March 14, 2012, notwithstanding the foregoing, the Langleys filed a formal motion for leave to amend their pleading, including as an exhibit thereto a proposed pleading styled as the Langleys second amended complaint. On March 19, 2012, I found that the Langleys' motion of March 14, 2012, superseded the constructive motion for leave to amend of February 17, 2012, thereby effectively denying the constructive motion as moot. On April 13, 2012, the Langleys filed a second motion for leave to amend, apparently entirely duplicative of their first such motion, but without filing their proposed new pleading as an exhibit thereto.

Now before the court are the Langleys' first-filed motion (#51) for leave to amend their pleading, and second-filed motion (#56) for leave to amend their pleading. I have considered the motions and all of the pleadings and papers on file. For the following reasons, I recommend that the first-filed motion (#51) for leave to amend be denied on grounds of futility and that the second-filed motion (#56) for leave to amend be denied as moot. However, for the reasons set forth below, I further recommend that the Langleys be granted an additional period of thirty days within which to amend their complaint to accurately allege facts sufficient to cure the

jurisdictional infirmities identified herein and in my previous Findings and Recommendation, dated January 10, 2012.

## LEGAL STANDARDS

### I.    Federal Subject-Matter Jurisdiction

The federal courts are courts of limited jurisdiction. *See, e.g., Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005), *citing Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). As such, the courts presume that causes of action "lie[] outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377; *see also, e.g., Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006). "If [a district] court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

"Defective allegations of jurisdiction may be amended, upon terms, in trial or appellate courts." 28 U.S.C. § 1653. It is improper to dismiss an action based on a defective allegation of jurisdiction without leave to amend "unless it is clear, upon *de novo* review, that the complaint could not be saved by amendment." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 n.6 (9th Cir. 2002), *citing Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001).

### II.    Leave to Amend

After a defendant has filed a response to an initially-filed complaint, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Federal Civil Procedure Rule 15 specifies that "[t]he court should freely give leave when justice so requires." *Id.* The Ninth Circuit has specified that Rule 15 is to be interpreted with "extreme liberality," *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990), *citing*

*United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981), although leave to amend is

nevertheless "not to be granted automatically," *id.* The district court's discretion to deny a motion

for leave to amend is particularly broad where the court has already given the plaintiffs one or

more opportunities to amend their complaint. *See, e.g., Mir v. Fosburg*, 646 F.2d 342, 347 (9th

Cir. 1980).

## ANALYSIS

### I.    Construction of the Langleys' Duplicative Motions

As noted above, after I construed the Langleys' filing of February 17, 2012, as a motion

for leave to amend their pleading, the Langleys filed two apparently duplicative additional

motions for leave to amend. The Langleys' first-filed motion (#51) and second-filed motion

(#56) for leave to amend appear to relate to precisely the same proposed amended pleading.

Moreover, in connection with their second-filed motion (#56), the Langleys advised the court

that they were filing a second motion for leave to amend out of an ill-specified concern that

failure to do so might result in some potential adverse procedural consequence, and not with the

intention either to supersede or to amend their first-filed motion (#51). I therefore recommend

that the court construe the Langleys' first-filed motion (#51) for leave to amend as the Langleys'

operative motion, and deny the second-filed motion (#56) for leave to amend as moot.

### II.    The Langleys' Motion (#51) for Leave to Amend

A motion for leave to amend should be granted unless there has been a showing that to

permit the amendment would produce an undue delay in the litigation, that the motion was

brought in bad faith or out of dilatory motive, that the movant has repeatedly failed to cure

deficiencies in the complaint by previous amendments, that the proposed amendment would

unduly prejudice an opposing party, or that the proposed amendment would result in futility for lack of merit. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Moreover, it is well settled that, of these factors, the most important is the potential for prejudice to opposing parties, *see Jackson*, 902 F.2d at 1387, *citing Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971), that futility alone is sufficient grounds for denying a motion to amend, *see Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004), *quoting Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir. 2003), and that undue delay alone is insufficient to justify the denial of a motion for leave to amend, *see Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). The Ninth Circuit has held that "a district court does not abuse its discretion in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995), *citing Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990). The district courts have authority to grant a motion for leave to amend only in part where the factors justifying denial apply only to some and not to all of the proposed amendments. *See, e.g., Wagner v. Posner*, Case No. 09-CV-3166 FCD KJN P, 2010 U.S. Dist. LEXIS 95062 (E.D. Cal. August 26, 2010); *Vieste, LLC v. Hill Redwood Dev.*, case No. C 09-04024 JSW, 2010 U.S. Dist. LEXIS 92387 (N.D. Cal. August 11, 2010); *Hildes v. Andersen*, Case No. 08-CV-8-BEN, 2010 U.S. Dist. LEXIS 72086, 28-29 (S.D. Cal. July 19, 2010).

As a preliminary matter, I note (as I did in my Findings and Recommendation dated January 10, 2012) that plaintiffs are proceeding *pro se*, and, as such, their pleading is to be liberally construed, and held to a less stringent standard than it would be had it been drafted and signed by an attorney. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, the

Page 5 - FINDINGS AND RECOMMENDATION

existence or absence of subject-matter jurisdiction is an objective question of law, *see, e.g.*, *Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 554 (9th Cir. 1992), and the federal courts are without authority to decide claims over which they lack subject-matter jurisdiction, regardless of the liberal construction to which the Langleys' pleading is entitled, *see* Fed. R. Civ. P. 12(h)(3). I further note (also as I did in my Findings and Recommendation dated January 10, 2012) that, because there is no suggestion that any alternative ground for exercise of subject-matter jurisdiction is or could be present here, this court may only properly exercise subject-matter jurisdiction over plaintiffs' claims if one or more of the claims arises under the United States Constitution or a federal law or treaty, or, in the alternative, necessarily gives rise to a federal question.

By and through their complaint as originally filed (as noted above), the Langleys alleged Jones' liability for fraud and deceit with respect to securities in violation of Or. Rev. Stat. 59.135, both defendants' liability for financial abuse of an elder in violation of Oregon's Elder Abuse and Dependent Adult Civil Protection Act and the Oregon Welfare Institutions Code, and both defendants' liability for intentional infliction of emotional distress. Judge Simon dismissed each of those claims without prejudice for lack of subject-matter jurisdiction on March 8, 2012. By and through their proposed amended pleading, the Langleys seek to re-allege precisely those same claims,[1] and to add three additional claims. For precisely the same reasons identified in my

---

[1] The Langleys modified their allegations in support of their elder abuse claim solely to reference additional statutes and sources of law, in addition to those referenced in the Langleys' original complaint, that the Langleys claim the defendants violated in committing their alleged acts of elder abuse. The new references to additional statutes and sources of law do not impact the analysis set forth in my Findings and Recommendation of January 10, 2012, which established that the Langleys' elder abuse claim fails to raise any federal question. The Langleys have not modified their allegations in support of their securities claim or their intentional

Page 6 - FINDINGS AND RECOMMENDATION

Findings and Recommendation dated January 10, 2012, and in Judge Simon's Opinion and Order dated March 8, 2012, the three claims common to both the Langleys' complaint as originally filed and their proposed amended complaint do not raise any federal question, and therefore do not give rise to federal subject-matter jurisdiction.

The first proposed new claim (the fourth enumerated claim of the proposed amended pleading) is alleged in its entirety as follows:

> 7.1    Defendants [*sic*] incorporate by reference, as though fully set forth herein, the above factual allegations of paragraphs 3.1 through 3.30.

> 7.2    Defendants claim that Plaintiff has no standing to bring forth this action as Plaintiff [*sic*?] has engaged in unjust enrichment by willful and malicious land fraud and elder abuse.

> 7.3    Defendants claim that Plaintiff [*sic*?] committed premeditated land fraud by engaging a private corporation to construct wind generators prior to acquiring the land from Defendants [*sic*?] in order to gain unlawful enrichment.

Proposed Amended Pleading at ¶¶ 7.1-7.3. While I find these allegations virtually unintelligible, I note that the allegations reference the common-law torts of unjust enrichment and fraud, and the statutory tort of elder abuse. Each of these is a pure creature of Oregon law rather than of federal law. As such, I am unable to construe the allegations in support of the fourth enumerated claim for relief as arising under federal law or the Constitution, or as giving rise to any essentially federal question.

The second proposed new claim (the fifth enumerated claim of the proposed amended pleading) is alleged in its entirety as follows:

> 8.1    Defendants [*sic*] incorporate by reference, as though fully set forth herein,

---

infliction of emotional distress claim in any significant respect.

Page 7 - FINDINGS AND RECOMMENDATION

the above factual allegations of paragraphs 3.1 through 3.30.

8.2    Defendants [*sic*?] claim that Plaintiff [*sic*?] has committed numerous criminal acts against the Defendants [*sic*?] and numerous other both Elderly and non-elderly individuals for the expressed purpose of stealing property to acquire an ill-gotten gain and unjust enrichment.

8.3    Defendants [*sic*?] claim Plaintiff [*sic*?] should be criminally charged and incarcerated for her [*sic*?] ongoing illegal activities, and all her [*sic*?] properties seized due to a violation of the RICO Act.

Proposed Amended Pleading at ¶¶ 8.1-8.3.  In addition, the Langleys pray, apparently in connection with this claim, that the court "[r]efer Defendants to County and/or State District/Prosecuting Attorneys for criminal investigations for ongoing willful and illegal elder-abuse and fraud, and Bound Plaintiffs [*sic*?] over for the above criminal activities." Proposed Amended Pleading, Prayer for Relief at g.  To the extent that the Langleys seek, by and through the fifth enumerated claim, the imposition of criminal penalties or the institution of criminal charges against the defendants, the claim is a procedural nonentity in the context of this civil action, and fails to give rise to federal-question jurisdiction.  I note, however, that Paragraph 8.3 of the proposed amended pleading references "violation of the RICO Act."  I assume, for purposes of this analysis, that the reference is to the federal Racketeer Influenced and Corrupt Organizations Act, and not to its Oregon equivalent.  There is a federal civil action available to victims of a racketeering enterprise under the federal RICO Act:

> Any person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of

limitations shall start to run on the date on which the conviction becomes final.

18 U.S.C. § 1964(c). "To demonstrate RICO standing, a plaintiff must allege that it suffered an

injury to its 'business or property,' 18 U.S.C. § 1964(c), as a proximate result of the alleged

racketeering activity, *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 112 S. Ct.

1311, 117 L. Ed. 2d 532 (1992). In other words, RICO standing requires compensable injury and

proximate cause." *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1055 (9th Cir. 2008).

Moreover, to state a claim for violation of 18 U.S.C. § 1962, requisite under Section 1964(c) to

bringing a civil RICO action, "a plaintiff must allege '(1) conduct (2) of an enterprise (3) through

a pattern (4) of racketeering activity.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir.

2007), *quoting Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). An associated-in-fact

RICO "enterprise" (the only type of RICO enterprise of conceivable relevance here) is "a group

of persons associated together for a common purpose of engaging in a course of conduct."

*United States v. Turkette*, 452 U.S. 576, 583 (1981). "To establish the existence of such an

enterprise, a plaintiff must provide both 'evidence of an ongoing organization, formal or

informal,' and 'evidence that the various associates function as a continuing unit.'" *Odom*, 486

F.3d at 552, *quoting Turkette*, 452 U.S. at 583. In addition, "racketeering activity" for purposes

of the statute is defined as follows:

(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year;

(B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659

Page 9 - FINDINGS AND RECOMMENDATION

(relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461–1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581–1592 (relating to peonage, slavery, and trafficking in persons)., section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic), sections 175–178 (relating to biological weapons), sections 229–229F (relating to chemical weapons), section 831 (relating to nuclear materials),

(C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501 (c) (relating to embezzlement from union funds),

(D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States,

(E) any act which is indictable under the Currency and Foreign Transactions Reporting Act,

(F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or

(G) any act that is indictable under any provision listed in section 2332b (g)(5)(B).

18 U.S.C. § 1961(1).

Here, analysis of the Langleys' proposed amended pleading establishes that the Langleys have not stated a civil RICO claim. First, the Langleys have not alleged that the defendants are members of a RICO "enterprise." Second, the Langleys have not alleged that the defendants harmed them through a "pattern" of racketeering activity. Third, and perhaps most critically, the Langleys have not alleged any "racketeering activity" on the part of the defendants that could give rise to a civil RICO action. Of the entire litany of criminal activities that constitute the definition of racketeering activity, the only one of conceivable application to the defendants' alleged conduct is "fraud in the sale of securities," recited at 18 U.S.C. § 1961(1)(D). However, as noted above, the exception to the rule that violation of Section 1962 gives rise to a civil RICO action under Section 1964(d) is that "no person may rely upon any conduct that would have been

actionable as fraud in the purchase or sale of securities to establish a violation of section 1962."

18 U.S.C. § 1964(d). I therefore conclude that the reference in Paragraph 8.3 of the Langleys'

proposed amended pleading does not give rise to any federal question.

The third proposed new claim (the sixth enumerated claim of the proposed amended

pleading) is alleged in its entirety as follows:

9.1    Defendants [*sic*] incorporate by reference, as though fully set forth herein, the above factual allegations of paragraphs 3.1 through 3.30.

9.2    Defendants [*sic?*] claim that Plaintiff [*sic?*] had planned to steal Defendants' [*sic?*] property for many years, and had made arrangements with a Wind Company representative, John C. Steiner, to bring Wind Towers onto Defendants' [*sic?*] property.

9.3    Defendants [*sic?*] claim that Plaintiff [*sic?*] attempted to steal Defendants property for the mineral rights as well as the Wind Power revenue, and made an illegal authorization of easement through the 160 acres Plot to Mr. Steiner in order to begin putting up the wind towers. See Attachment-D, Recorded Easement Agreement identified as "*Two-Pet Geese Trust*."

9.4    Defendants [*sic?*] claim that Plaintiff [*sic?*] hid the fact that Defendants [*sic?*] owned the property under an illegally recorded Trust known as "*Two-Pet Geese Trust*"

9.5    Plaintiff [*sic?*] had no intentions of sharing any monies received for the sale of Defendants' [*sic?*] 640 acres piece of property but was a roués [*sic*] to get Defendants [*sic?*] to sign a fraudulent document, and Plaintiff [*sic?*] had in fact partnered with Mr. Charles Phillips to split profit of the property 50%-50% between them. This claim is proven by the PARTNERSHIP AGREEMENT between Plaintiff [*sic*] and Mr. Phillips, which has no reference to the Defendants [*sic?*], but clearly identifies the conspiracy between them. See Attachment-E, AGREEMENT between Plaintiff [*sic*] and Mr. Phillips dated November 4, 2009.

Proposed Amended Pleading at ¶¶ 9.1-9.5. These allegations appear to be intended to state a

claim for fraud, but may additionally or alternatively be intended to state a claim for trespass. In

either event, the claims at issue are creatures of Oregon law rather than of federal law. This set

of allegations likewise gives rise to no federal question.

In addition to the three new claims set forth in the Langleys' proposed amended pleading,

the proposed amended pleading contains the following allegations of fact that did not appear n

the Langleys' complaint as originally filed:

3.21    Plaintiffs allege that Plaintiff [*sic*?] filed fraudulent Quit Claim Deeds
        because the Notary signature and the Plaintiffs' signature are dated
        incorrectly, as the alleged Plaintiffs' signatures are for September 14, 2009
        and the Notary Seal signature is dated September 25, 2009, eleven-days
        after the Plaintiffs' allegedly signed the documents. The fact is that the
        two recorded documents are altered documents as the Rerecord was made
        from the original Recorded document which is proven when Plaintiffs'
        overlaid the two documents that matched up perfectly. See Attachment-A,
        two alleged legal Recorded-A 1 and Rerecorded-A2 Quit Claim deeds.

3.22    Jones filed for an eviction action on or about February 21, 2012 seeking
        ejection of Plaintiffs from their property.

3.23    Plaintiffs submitted their Answer, Affirmative Defenses, and
        Counterclaims, and hearing was held wherein this [*sic*] Court granted
        Plaintiffs' Money award ($168.00), Judgment and Other Order on March 2,
        2012.

3.24    Plaintiffs have been investigating Defendants for some time now and have
        discovered that Jones has an ongoing extensive history of continued Elder
        Abuse and fraudulent activitie in several States, ie., Nevada, Idaho,
        California and Oregon. See Attachment-B, actions involving Jones and
        Property Jones allegedly owns in other states.

3.25    Jones has again sought another eviction action to get Plaintiffs ejected
        from their own property.

3.26    Jones has no standing to eject Plaintiffs due to the unlawful fraudulent
        activity and willful misrepresentation to Plaintiffs in the manner Jones
        used to trick Plaintiffs into signing a fraudulent deed.

3.27    Prior to Jones' attempt to steal Plaintiffs' property, Jones had made
        arrangements with a Wind-Power Company (OREGON WINDFARMS) to

put up Wind Towers on parcel # 25, 160 acres adjoining Mr. Steiner's other windpower towers, and this is verified by the fact that Jones made an illegal transfer of Plaintiffs' property to her "2-Pet Geese Trust" and then illegally authorized an "easement" through parcel # 25, 160 acres, on June 23, 2011.  See Attachment-C, the Recorded Trust and Easement documents to OREGON WINDFARMS.

3.28    Jones has been committing these illegal elder-abuse and fraudulent activities for many years and it has cost Plaintiffs over $9,000.00 to continuously defend their rights to the property.

3.29    Because Jones uses her own elderly status to defraud other elderly individuals, Jones should be charged criminally for her illegal conduct and incarcerated for the remainder of her life, as Jones is a threat to every elderly individual she seeks out to willfully and illegally steal their life's savings, property(s) and other items they own.

3.30    During the last Eviction filed by Jones, the Court stated on the record as he was dismissing Jones' Eviction action, that Plaintiffs have a very valid Elder Abuse claim.

Proposed Amended Pleading, at ¶¶ 3.21-3.30.  These allegations patently state no federal cause of action, and raise no federal question.

For the foregoing reasons, the Langleys' proposed new pleading states no claim over which this court could properly exercise federal subject-matter jurisdiction.  I therefore recommend that the court deny the Langleys' motion for leave to amend.  However, in light of the Langleys' *pro se* status, and because the Langleys' allegations in support of one of their proposed new claims (the fifth enumerated claim of the proposed amended pleading) made reference to a federal statutory scheme under which a private civil action exists (the federal RICO act), I further recommend that the court grant the Langleys an additional period of thirty days within which to amend their complaint to accurately allege facts sufficient to cure the jurisdictional infirmities identified above and in my previous Findings and Recommendation dated January 10, 2012.

Page 14 - FINDINGS AND RECOMMENDATION

## CONCLUSION

For the reasons set forth above, the Langleys' first-filed motion (#51) for leave to amend should be denied, the Langleys'second-filed motion (#56) for leave to amend should be denied as moot, and the Langleys should be granted a period of thirty days within which to file an amended complaint that accurately alleges facts sufficient to cure the jurisdictional infirmities identified above.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately

/ / /

/ / /

/ / /

/ / /

Page 15 - FINDINGS AND RECOMMENDATION

appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1)

of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 18th day of May, 2012.

Honorable Paul Papak
United States Magistrate Judge

Page 16 - FINDINGS AND RECOMMENDATION